## GULF INS. CO. v. LANDAMORE et al.
### (No. 8310.)

Court of Civil Appeals of Texas. San Antonio.
Dec. 21, 1929.

Rehearing Denied Jan. 15, 1930.

R. W. Mayo, of Dallas, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Henry C. King, Jr., M. L. Roark, J. Franklin Spears, Nelson Lytle, and T. M. West, all of San Antonio, for appellees.

FLY, C. J. Appellee Charles A. Landamore declared on a fire insurance policy for $1,000, issued on a house in Stockdale by Security National Fire Insurance Company, on October 8, 1926, and expiring on October 8, 1927; the house insured having been destroyed by fire on September 30, 1927. Landamore declared in the alternative on a policy for $1,000 issued by appellant, Gulf Insurance Company, and on a trial by the court judgment was rendered in favor of Security National Fire Insurance Company and against Landamore, and in favor of the latter, as to appellant, for $1,000.

The facts show that a policy for $1,000 was issued to Landamore on October 8, 1926, on his house in the town of Stockdale, by Security National Fire Insurance Company, good for one year or until October 8, 1927. The policy was in full force and effect on September 30, 1927, when the house was consumed by fire. An attempted cancellation of the policy was made by A. C. Bain, the agent of both of the insurance companies, and notice of his attempted cancellation of the first policy and the substitution of a policy in the appellant company was unauthorized by Landamore and done without his knowledge or consent. The policy given by Security National Fire Insurance Company provided that the policy could be canceled by the insurance company, by giving five days' notice of such cancellation to the insured. No notice of any kind was given to Landamore until two days after the house had been destroyed by fire. On September 27, 1927, without being authorized by the insured, Bain issued a policy in the Gulf Insurance Company, and in the face of the last-named company's instructions not to insure any property on which any policy had been canceled. The last-named policy was not delivered to appellee Landamore until after the fire.

The facts should be considered and a decision reached without reference to the second policy. The Security National Fire Insurance Company had issued a policy to Landamore, and it was in his possession without cancellation when the fire occurred. The fire occurred three days after the attempted cancellation, and as said by Bain: "Mr. Landamore could not possibly have been given the five days' notice as the fire occurred too soon." Under the very terms of the policy itself it was still in existence at the time of the fire.

We cannot entertain the proposition that Bain was the agent of the insured. To so hold would be to destroy the protection of the insured and place him at the mercy of insurance companies. Bain disclaimed any authority to act for the insured except as insurance agents are usually authorized to act and do act for policyholders in the renewal of policies. It is the custom upon the part of a policyholder to rely upon the insurance agent to keep his policies alive by renewals, with no intention, by so doing, to constitute such insurance agent his agent. Landamore placed himself in the same relation towards Bain as that occupied by most policyholders towards the agents of the companies in which they are insured. He swore: "When I moved away from Stockdale I merely told Mr. Bain to keep the property insured; that was all." The niece of Landamore, who last spoke to Bain about the insurance, said: "I attended to this insurance business the last time. I happened to be in Stockdale and over in the bank and I went to see Mr. Bain. I knew the house was rented. I told Mr. Bain I knew the insurance would be up in October and for him to be sure to keep the policy up and he said he would. That was in August." If application for insurance constitutes the agent of the insurance company the agent of the insured for all purposes, policyholders are at the mercy of insurance companies. Bain stated he had no

authority to receive a notice for the insured and sought to notify him. In the case of East Texas Fire Insurance Co. v. Blum, 76 Tex. 653, 13 S. W. 572, 575, A. T. Glenn & Son had written to E. L. Bridges, an insurance agent, to obtain insurance for them, without designating the company, and Chief Justice Stayton held that such request made Bridges the agent for the parties desiring insurance so far as he acted in securing it, but held further "that Bridges was the agent of assured to procure the policy, but that with its procurement his agency ceased; hence notice of cancellation given to him was not notice to assured." That enunciation of law is concurred in by decisions by the courts of a number of other states.

However, in the case of Dalton v. Norwich Union Fire Insurance Society, 213 S. W. 230, 231, the following language was used by the Commission of Appeals: "The five days' provision of the cancellation notice clause of the standard form policy is for the benefit of the insured, and may be waived by him through his agent who has contracted to keep him insured. An agent who is not only authorized to procure the insurance, but keep the property insured, may accept notice of cancellation, and substitute therefor other insurance, without waiting for the expiration of the five days."

The agent mentioned was the agent of the insurer, and the language is in direct conflict with the decision of the Supreme Court hereinbefore cited. In fact, the opinion in East Texas Fire Insurance Co. v. Blum, 76 Tex. 653, 13 S. W. 572, seems to have been forgotten or ignored, and a West Virginia decision is alone cited for sustaining the language used by the Commission of Appeals. The matter is still further complicated by another opinion by the Commission of Appeals in Alliance Ins. Co. v. Continental Gin Co., 285 S. W. 257, 258, which in an involved manner seems to return to the law which was announced by Chief Justice Stayton in East Texas Fire Ins. Co. v. Blum, although that case is not cited and the Dalton case is cited. In the case of Alliance Ins. Co. v. Continental Gin Co., one Sellers was the insurance agent and it was contended that he was also the agent of the insured parties, and the court said: "The theory upon which the trial court and the Court of Civil Appeals proceeded has a double aspect. It is, first, that Sellers, properly, was the agent of the assureds as well as of the insurers, and that his actual ex parte handling of the matter was competent to obligate all; second, that Conn's ratification (after the fire) of what had been done by Sellers theretofore supplied whatever had been lacking in respect to an effective cancellation of the first set of policies and a valid issuance of the others. We cannot agree with the rulings, whether they be rested upon the one thought or the other or upon both in combination." Conn was the

general manager of the Gin & Milling Company and obtained the insurance. The facts are quite similar to those in the present case, and after reading a discussion of custom and usage and a declaration that, "Usage is a fact. Custom is the law," we are of the opinion that it justifies a ruling that Bain had no authority to cancel the policy held by the insured, Landamore, without notice to him and to substitute another policy in another company for that held by the insured. We are strengthened in our construction of the opinion by the fact that the judgments of the district court and Court of Civil Appeals were reversed and judgment rendered against the insurance company, which had sought through Sellers, without notice to Conn, to cancel the original policy.

In the case of Grace v. American Central Ins. Co., 109 U. S. 278, 3 S. Ct. 207, 208, 27 L. Ed. 932, the Supreme Court of the United States, in passing upon the powers of an insurance agent to bind the insured, when no authority had been vested in him except to procure insurance, and when the lower court had held as was held by the trial judge in this case, and by the Commission of Appeals in the Dalton Case, reversed that ruling. In that case there was a provision in the policy that, "It is a part of this contract that any person, other than the assured, who may have procured the insurance to be taken by this company, shall be deemed to be the agent * * * named in this policy," and the Supreme Court said: "Upon this ground it was ruled that notice of the termination of the policy was properly given to Anthony, who personally procured the insurance. We do not concur in this interpretation of the contract. The words in their natural and ordinary signification import nothing more than that the person obtaining the insurance was to be deemed the agent of the insured in all matters immediately connected with the procurement of the policy. * * * When the contract was consummated by the delivery of the policy he ceased to be the agent of the insured, if his employment was solely to procure the insurance." In the case before this court Bain had procured a policy for $1,000 in Security National Fire Insurance Company and delivered it to Landamore, who had it in his possession when the fire occurred. Bain had nothing more to do with that policy, for he had completed his agency of procurement, and any requests made to renew the insurance or "keep up" the insurance had no reference to the policy already in existence. The procurement of a new policy at the expiration of the old was all Bain was authorized to do under the most liberal and reasonable construction of his powers. Landamore nor Bain dreamed that such agency carried with it the authority to accept a cancellation of the policy without notice to the insured.

The case of Clark v. Insurance Co., 89 Me. 26, 35 A. 1008, 1011, 35 L. R. A. 276, in its facts is quite similar to this case. An agent of the insurance company had been requested by the insured to procure a policy for him, which he did procure, and afterwards without the knowledge or consent of the insured attempted to cancel the policy and take out another policy, and the Supreme Court of Maine held: "The attempted cancellation and the effort to place the risk in the defendant company were parts of the same transaction, with no consent of the assured. Unless the cancellation was valid, the second risk did not attach. It is not pretended that the plaintiff was aware of any intention or attempt at cancellation till the morning after the loss occurred. Until the five days' notice provided in the policy should be given him, or he should consent to such cancellation, the first policy would remain in force, and the second would not become operative as a legal subsisting contract." The logic of that decision is unanswerable.

In the case of Johnson v. Insurance Co., 66 Ohio, 6, 63 N. E. 610, 612, which is quite similar in its facts to the facts in this case, the Supreme Court of Ohio held: "But the disputed question in the case at bar is, do the facts justify the conclusion that authority to accept notice of cancellation for Johnson was given? Certainly it is not to be inferred from any long course of dealing, for it does not appear that the parties had between them but the one transaction. Nor do the facts found disclose any actual intention to clothe Chappell with power to act for Johnson beyond the procuring of the policy. It does not appear that the minds of the parties, or either of them, was directed to that matter. Not a word was said on the subject. Indeed, the conduct of Chappell would imply that he did not at the time suppose that he had authority to act for Johnson in the matter of cancellation. * * * We think that, both on reason and authority, the question must be answered in the negative. An agent to procure a contract has no power to discharge it implied from the original authority merely, for authority to make a contract cannot be held to imply authority to destroy it." This is the trend of the better authorities all over the Union, and we would not have felt it incumbent upon this court to have given so much time to a proposition so plain and reasonable as the one announced in the quotations made, had it not been that the Dalton Case had confused the matter in Texas, and that this cause was decided by a trial judge noted for the clarity, strength, and unassailable reasoning of his decisions in most instances.

The case has been fully developed, the facts found by the trial judge are clear and follow the statement of facts, and they lead irresistibly to the conclusion that the judgment is erroneous, and that instead of judgment being rendered against appellant it should be rendered in favor of Landamore against Security National Fire Insurance Company.

It is therefore the order of this court that the judgment of the trial court be reversed, that Charles A. Landamore recover nothing from the Gulf Insurance Company and that it go hence with its costs, and that said Landamore recover of the Security National Fire Insurance Company the sum of $1,000, together with interest at 6 per cent. per annum from September 30, 1927, and all costs in this behalf expended.